## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## WESTERN DIVISION

DAVID PELZER; *et al.*                                                    PLAINTIFFS

v.                                      No. 4:11CV00108 JLH

                                                                    DEFENDANT and
ARMTECH INSURANCE SERVICES, INC.                        THIRD PARTY PLAINTIFF

v.

LDC, III, INC.; and LARRY D. CHURCH          THIRD PARTY DEFENDANTS

* * * * * * * * * * * * * * * * * * * * * * * * * * * * *

LARRY HUNT; *et al.*                                                      PLAINTIFFS

v.                                      No. 4:12CV00346 JLH

                                                                    DEFENDANT and
ARMTECH INSURANCE SERVICES, INC.                        THIRD PARTY PLAINTIFF

v.

LDC, III, INC.; and LARRY D. CHURCH          THIRD PARTY DEFENDANTS

### OPINION AND ORDER

The plaintiffs, who farm land in Arkansas, allege that an agent of their crop insurance company, ARMtech Insurance Services, falsely told them that certain crops would be covered by their federally reinsured policies. ARMtech, in turn, has filed a third-party complaint against the agent, Larry Church, and his agency, LDC, III, Inc. ARMtech has now moved for summary judgment on all claims, the plaintiffs have moved to amend their complaints, and Church has moved for summary judgment on ARMtech's third-party complaint. For the following reasons, ARMtech's motions for summary judgment are granted in part and denied in part, the plaintiffs' motion to amend is denied, and Church's motion for summary judgment is denied.

## I.

A court should enter summary judgment if the evidence demonstrates that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986). The moving party bears the initial responsibility of demonstrating the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986). If the moving party meets this burden, the nonmoving party must respond by coming forward with specific facts establishing a genuine dispute for trial. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc). In deciding a motion for summary judgment, a court views the evidence in the light most favorable to the nonmoving party and draws all reasonable inferences in that party's favor. *PHL Variable Ins. Co. v. Fulbright McNeill, Inc.*, 519 F.3d 825, 828 (8th Cir. 2008). A genuine dispute exists only if the evidence is sufficient to allow a jury to return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 249, 106 S. Ct. at 2511. When a nonmoving party cannot make a showing sufficient to establish a necessary element of the case on which that party bears the burden of proof, the moving party is entitled to judgment as a matter of law. *Celotex Corp.*, 477 U.S. at 322-23, 106 S. Ct. at 2552.

## II.

In 1938, Congress enacted the Federal Crop Insurance Act (FCIA) "to promote the national welfare by improving the economic stability of agriculture through a sound system of crop insurance and providing the means for the research and experience helpful in devising and establishing such insurance." *Alliance Ins. Co. v. Wilson*, 384 F.3d 547, 549 (8th Cir. 2004) (quoting 7 U.S.C.

§ 1502).  Originally, the FCIA permitted only the Federal Crop Insurance Corporation (FCIC) to issue crop insurance policies and handle claims on those policies.  *Id.*  That changed in 1980, when Congress amended the FCIA and authorized the FCIC to allow private insurance companies such as ARMtech to sell and service crop insurance policies to farmers.  *Id.*; *see also Williams Farms of Homestead, Inc. v. Rain & Hail Ins. Servs., Inc.*, 121 F.3d 630, 633 (11th Cir. 1997).  These policies are then fully reinsured by the FCIC so long as the insurance companies use the standard policy guidelines, including terms and conditions, established by the FCIC.  *Williams Farms*, 121 F.3d at 633; *Nobles v. Rural Cmty. Ins. Servs.*, 122 F. Supp. 2d 1290, 1292 (M.D. Ala. 2000).

The plaintiffs consist of two groups, the Pelzers and the Hunts.[1]  The Hunts farm land in Miller County, Arkansas, and the Pelzers farm land in Desha County and Drew County, Arkansas.[2]  In the spring of 2007, the Hunts asked Church if planting non-irrigated corn as a second crop behind winter wheat would be insurable.  Church advised the Hunts that this double-cropping would be insurable.  Church says that this advice was based on two conversations he had with Buckles Bryant, ARMtech's national claims manager, in which Bryant affirmed the insurability.[3]  Several weeks later, Church advised the Pelzers that they also would be insured for non-irrigated corn planted behind wheat.  Thereafter, both the Hunts and the Pelzers applied for and were issued, by ARMtech, multiple

---

[1] The "Pelzers" here includes David Pelzer, David and Ruth Pelzer, LLC, and David and Matthew Pelzer, LLC.  The "Hunts" includes Larry Hunt and H&D Farms.

[2] The Pelzers also farm land in Ashley County, Arkansas, although that land is inconsequential to the proceedings at hand.

[3] The parties dispute whether Church accurately represented what Bryant told him, but they agree that this dispute is irrelevant to the motions for summary judgment here.  *See* Document #113, at 3 n.2; Document #116, at 4-5.

peril crop insurance policies for the 2007 crop year that were "reinsured by the [FCIC] under the authority of section 508(h) of the [FCIA]." *See* Document #53-2, at 1.[4]

The coverage provisions of the insurance policies stated that the plaintiffs were protected against "unavoidable loss" that directly resulted from a specified "naturally occurring event." Document #53-2, at 15 (Basic Provisions § 13). The plaintiffs would not be covered, however, if they failed to follow "recognized good farming practices for the insured crop." *Id.* (Basic Provisions § 13(b)); *see also* 7 U.S.C. § 1508(a)(3)(A)(iii). The policies defined "good farming practices" as:

> production methods utilized to produce the insured crop and allow it to make normal progress toward maturity and product at least the yield used to determine the revenue guarantee, . . . [which are,] for conventional or sustainable farming practices, those [methods] generally recognized by agricultural experts for the area.

Document #53-2, at 3 (Basic Provisions § 1: Good farming practices). The policies further stated that "We [ARMtech] may, or you [the insured] may request us to, contact FCIC to determine whether or not production methods will be considered to be 'good farming practices.'" *Id.*

With their policies in hand, the plaintiffs, with the exception of H&D Farms, then planted non-irrigated corn behind winter wheat on several parcels of their land, and they certified to ARMtech in writing that they were doing so. ARMtech issued schedules of insurance to the plaintiffs based on these certifications. David Pelzer planted 375.7 acres of non-irrigated corn behind harvested wheat in Desha County. David & Matthew Pelzer, LLC did the same for 175 acres in Desha County and 62.7 acres in Drew County. David & Ruth Pelzer, LLC, did the same for 24 acres in Desha County

---

[4] All of the named plaintiffs with the exception of H&D Farms elected to insure the double-cropped corn under a Revenue Assurance Insurance Policy. H&D Farms choose instead to insure its corn under an Actual Production History policy. While these are separate policy forms, the portions relevant to the arguments here are the same. Thus, for brevity's sake, the Court will cite and refer only to the Revenue Assurance Insurance Policy provisions.

and 120 acres in Drew County.  Finally, Larry Hunt planted 1,543.9 acres of non-irrigated corn behind harvested winter wheat in Miller County.  H&D Farms, however, certified to ARMtech that, due to adverse weather conditions, it had been prevented from planting corn as a second crop on 417.1 acres in Miller County.  The other plaintiffs eventually reported to ARMtech that bad weather had destroyed their double-cropped corn.

When the plaintiffs made claims pursuant to their ARMtech insurance policies, they were asked to provide documentation to show that planting non-irrigated corn behind harvested winter wheat was a good farming practice in Arkansas.  The plaintiffs were unable to do so.  ARMtech was advised by representatives of the Farm Service Agency and the University of Arkansas Cooperative Extension Service that this type of double-cropping was not considered a good farming practice anywhere in Arkansas.[5]  Consequently, ARMtech denied the plaintiffs' claims as uninsurable and refunded the crop insurance premiums.

The Hunts and the Pelzers then separately requested reconsideration of this determination from a regional office of the Risk Management Agency (RMA) in Jackson, Mississippi.[6]  In early 2008, the regional office determined that the plaintiffs' double-cropping was not a good farming practice in their respective Arkansas counties.  The plaintiffs appealed this decision to the RMA's deputy administrator, who affirmed.  Having exhausted the reconsideration process, the Hunts and the Pelzers, in separate actions, sued the USDA, the FCIC, the RMA, and ARMtech.  The two cases

---

[5] The Farm Service Agency is an administrative agency of the United States Department of Agriculture (USDA).  The Cooperative Extension Service is a part of the University of Arkansas's Division of Agriculture.

[6] The RMA was created in 1996 to operate and manage the FCIC.  *Am. Growers Ins. Co. v. FCIC*, 532 F.3d 797, 798 (8th Cir. 2008).

5

were eventually consolidated in this Court.  *See* Document #76.[7]  The plaintiffs originally sought, among other things, judicial review of the RMA's final determination that planting non-irrigated corn behind winter wheat was not a good farming practice in their respective counties.  As to the Pelzers, this issue was resolved in favor of the RMA in an order issued on July 14, 2011.  *See* Document #42. As to the Hunts, this issue was resolved in favor of the RMA by an order entered on February 21, 2012.  *See* Case No. 4:12CV00346, Document #30.

In their remaining claims, the plaintiffs allege that, because of Church's assurance that their double-cropping would be insured, ARMtech is liable for negligence, deceit, constructive fraud, and deceptive trade practices under Arkansas law.  The plaintiffs also seek reformation of the insurance contracts.  As noted above, ARMtech has moved for summary judgment on all of these claims, the plaintiffs have moved to amend their complaints to add a breach of contract claim, and Church has moved for summary judgment on ARMtech's third-party complaint.

### III.

ARMtech makes several arguments as to why the plaintiffs' state-law claims should be dismissed.  First, ARMtech argues that all of the plaintiffs' claims are preempted under the FCIA. Second, ARMtech argues that, even if these claims are not preempted, they should still be dismissed because, as a matter of law, the plaintiffs cannot demonstrate justifiable reliance.  Third, ARMtech echoes Church and argues that the claims should be dismissed because, as a mere soliciting agent, Church had no authority to bind ARMtech under Arkansas law.  Fourth, ARMtech argues that the

---

[7] Unless otherwise noted, all references to the docket are to those documents found at 4:11CV00108, which is now the lead case in this action.

plaintiffs' Arkansas Deceptive Trade Practices Act claims are barred.  The Court will address these arguments in turn.

A.    **Preemption**

"The general law of preemption is grounded in the Constitution's command that federal law 'shall be the supreme Law of the Land.'" *In re Aurora Dairy Corp. Organic Milk Mktg. & Sales Practices Litig.*, 621 F.3d 781, 791 (8th Cir. 2010) (quoting U.S. Const. art. VI, cl. 2); *see also Lefaivre v. KV Pharm. Co.*, 636 F.3d 935, 938-39 (8th Cir. 2011).  "State law is preempted when Congress expressly prohibits state regulation, when Congress implicitly leaves no room for state involvement by pervasively occupying a field of regulation, and when state law directly conflicts with federal law." *Chapman v. Lab One*, 390 F.3d 620, 624 (8th Cir. 2004).  "Federal regulations also may preempt state law, if the agency intends its regulations to have preemptive effect, and the agency is acting within the scope of its delegated authority." *Id.*

Congress, in passing the FCIA and subsequent amendments, "did not intend to preempt all state-based regulation of companies that sell federally reinsured crop insurance." *Alliance Ins.*, 384 F.3d at 552; *see also Rio Grande Underwriters, Inc. v. Pitts Farms, Inc.*, 276 F.3d 683, 685-86 (5th Cir. 2001) (noting that the circuits "agree that the FCIA does not completely displace state law remedies against crop insurers or their agents"); *Meyer v. Conlon*, 162 F.3d 1264, 1268-70 (10th Cir. 1998) (similar); *Williams Farms*, 121 F.3d at 634-35 (similar); *Holman v. Laulo-Rowe Agency*, 994 F.2d 666, 669 (9th Cir. 1993) (similar).  *But see Owen v. Crop Hail Mgmt.*, 841 F. Supp. 297 (W.D. Mo. 1994) (finding that the FCIA completely preempts state-law claims).  While ARMtech does not dispute this, it does argue that the plaintiffs' state-law claims in this action are nonetheless preempted.

Seven C.F.R. § 400.98(e) states that an "insured cannot file suit against the reinsurance company for determinations of good farming practices."   Instead, the insured must seek reconsideration of the determination by the RMA and may bring suit after doing so only against the FCIC.   *Id.*[8]   The policies reiterate these regulatory provisions.   *See* Document #53-2, at 23. ARMtech argues that the plaintiffs' state-law claims are merely cleverly worded ways of contesting ARMtech's good farming practice determination, which is prohibited by the regulation and contrary to the express language of the policy.

The plaintiffs have made it abundantly clear, however, that they are no longer challenging the determination that planting non-irrigated corn behind winter wheat was not a good farming practice in Arkansas.   *See* Document #116, at 22 (plaintiffs' attorney during oral argument: "That issue is dead.   Everyone can agree for purposes of this hearing, for purposes of this trial that planting corn behind harvested wheat in Miller County, Desha County, and Drew County, Arkansas is not a good farming practice as that is determined by the RMA.").   Rather, the plaintiffs allege that ARMtech misrepresented to them that non-irrigated corn planted behind winter wheat would be insurable.   In other words, the plaintiffs claim that ARMtech is liable for tortious conduct that preceded the federally reinsured contract.[9]   The plaintiffs' tort claims do not challenge ARMtech's good farming practice determination and therefore are not preempted on the basis of 7 C.F.R. § 400.98(e).   *Cf.*

---

[8] Here, the plaintiffs completed the reconsideration process and brought suit against the RMA and FCIC.   The Court affirmed the agency decision because it was not arbitrary and capricious.   *See id.* at 400.98(f); Document #42.

[9] ARMtech seems to admit this exact point in its response to the plaintiffs' motion to amend, when ARMtech states that the claims in the plaintiffs' original complaints are "purely state law tort claims that [are] based, not on any claim decision or determination under the policy, but on alleged company or agent misrepresentations."   Document #96, at 8.

*Wilson v. Zoellner*, 114 F.3d 713 (8th Cir. 1997) (insured's state-law tort claim against insurance agent for negligent misrepresentation not preempted by ERISA; agent told insured he would be covered for work-related injuries when he in fact was not).  At present, federal crop insurance regulations "reveal no conflict with state law claims for negligence, misrepresentation, or fraud." *Plants, Inc. v. Fireman's Fund Ins. Co.*, No. M2011-02063-COA-R3-CV, 2012 WL 3291805 (Tenn. Ct. App. Aug. 13, 2012); *see also Farmers Crop Ins. Alliance v. Laux*, 442 F. Supp. 2d 488, 491 (S.D. Ohio 2006) ("[T]he RMA has not extinguished state law causes of action that may arise from tortious conduct by private companies selling RMA-approved reinsurance contracts." (citing *Nobles*, 122 F. Supp. 2d at 1294)).

The plaintiffs' contract claims, however, are preempted.  The insurance policies state that, with the exception of good farming practice determinations, all disagreements with determinations made by the private insurer must be resolved through arbitration.  *See* Document #53-2, at 22-23 (Basic Provisions § 20(a)).[10]  The policies also explain that, when in conflict, policy provisions concerning arbitration prevail over state law.  *See id.* at 23 (Basic Provisions § 20(f)); *id.* at 26 (Basic Provisions § 31).  Furthermore, the policies declare that a failure to complete the arbitration process bars a plaintiff from seeking judicial review.  *Id.* at 23 (Basic Provisions § 20(b)(2)).  Finally, even if a plaintiff completes arbitration and seeks judicial review, before he can recover damages or attorneys' fees he must obtain a determination from the FCIC that the private insurer "failed to comply with the terms of [the insurance] policy or procedures issued by FCIC and such failure

---

[10] As explained above, good farming practice determinations can be challenged only through the reconsideration process and then through judicial review in an action against the FCIC.

9

resulted in [the plaintiff] receiving a payment in an amount that is less than the amount to which [he]

was entitled." *Id.* at 24 (Basic Provisions § 20(i)).

These policy provisions mirror the federal regulations. For example, 7 C.F.R. § 400.352,

entitled "State and local laws and regulations preempted," states:

> (a) No State or local governmental body or non-governmental body shall have the authority to promulgate rules or regulations, pass laws, or issue policies or decisions that directly or indirectly affect or govern agreements, contracts, or actions authorized by this part unless such authority is specifically authorized by this part or by the [Federal Crop Insurance] Corporation.

> (b) The following is a non-inclusive list of examples of actions that State or local governmental entities or non-governmental entities are specifically prohibited from taking against the Corporation or any party that is acting pursuant to this part. Such entities may not: . . .

>> (4) Levy fines, judgments, punitive damages, compensatory damages, or judgments for attorney fees or other costs against companies, employees of companies including agents and loss adjustors, or Federal employees arising out of actions or inactions on the part of such individuals and entities authorized or required under the Federal Crop Insurance Act, the regulations, any contract or agreement authorized by the Federal Crop Insurance Act or by regulations, or procedures issued by the Corporation (Nothing herein precludes such damages being imposed against the company if a determination is obtained from FCIC that the company, its employee, agent or loss adjuster failed to comply with the terms of the policy or procedures issued by FCIC and such failure resulted in the insured receiving a payment in an amount that is less than the amount to which the insured was entitled) . . . .

Additionally, 7 C.F.R. § 400.176, entitled "State action preemptions", states in part (b) that:

> No policy of insurance reinsured by the Corporation and no claim, settlement, or adjustment action with respect to any such policy shall provide a basis for a claim of punitive or compensatory damages or an award of attorney fees or other costs against the Company issuing such policy, unless a determination is obtained from the Corporation that the Company, its employee, agent or loss adjuster failed to comply with the terms of the policy or procedures issued by the Corporation and such failure

resulted in the insured receiving a payment in an amount that is less than the amount to which the insured was entitled.

As the Tennessee Court of Appeals explained in *Plants*, by virtue of these policy provisions and regulations, contract claims against private insurers are preempted but tort claims are not.

The current form of the regulations . . . reveal no conflict with state law claims for negligence, misrepresentation, or fraud. The language of the [standard policy] arbitration provision refers to disagreements over "determinations" made by the insurer presumably in accordance with the FCIA and FCIC regulations; however, misrepresentations regarding the policy or the applicability of a policy to a crop are distinguishable from a determination regarding the policy language and coverage under the policy. As *Skymont Farms*[11] recognized, some state law claims appear to have been preempted and recoverable damages limited based upon the current language in 7 C.F.R. §§ 400.352 and 400.176. Specifically, it appears that the current language of the arbitration provision and these two regulations would bar a breach of contract action as that would be based upon a "determination" by the corporation and would fall within the prohibitions contained in the above regulations. However, claims for negligence or misrepresentation do not conflict with these provisions. . . .

7 C.F.R. § 400.176 prohibits claims whose basis is the policy of insurance without a prior determination by the FCIC that there was a failure to comply with the terms of the policy and such failure resulted in the insured receiving a payment less than the amount the insured was entitled. However, state tort claims for negligence, misrepresentation, and fraud do not arise from the policy of insurance itself but from alleged tortious actions taken prior to the agreement being made or that occur outside the scope of the policy.

7 C.F.R. § 400.352 prohibits judgments or damages "arising out of actions or inactions ... authorized or required under the [FCIA], the regulations, any contract or agreement authorized by the [FCIA], or by regulations, or procedures issued by [the FCIC]." As the court in *Nobles* recognized, misrepresentations are not actions or inactions "required or authorized" under the FCIA, federal regulations, or the policy provisions.

Thus, as noted in *Skymont Farms*, "it does not follow from these specific exemptions that the entire rubric of state law claims and state court actions against the private insurance companies or insurance agents would be excluded." Keeping in mind that state law should only be displaced by federal law when there is a conflict, we find that Plants' state law claims for negligent misrepresentation and negligence are not

---

[11] *Skymont Farms v. North*, 862 F. Supp. 2d 755 (E.D. Tenn. 2012).

preempted by federal law.  Based upon the language in the federal regulations, however, we hold that the claims for breach of contract . . . are preempted for they pertain to actions or inactions "required or authorized" under the FCIA, federal regulations, or the policy provisions.

2012 WL 3291805, at *10-11 (citations omitted).[12]

The third sentence of the insurance policies here states: "The provisions of the policy may not be waived or varied in any way by us, our insurance agent, or any other contractor or employee of ours or any employee of USDA unless the policy specifically authorizes a waiver or modification by written agreement."  Document #53-2, at 1.  The plaintiffs' reformation claim in essence asks the Court to reform the contracts so that their corn crops would be insured even though the planting of them was not a good farming practice; but to reform the contracts in that manner would mean that a central provision of the contract had been waived or varied based on statements by an agent, which is explicitly barred by the insurance policy itself.

Moreover, until the 2005 crop year, 7 C.F.R. § 457.6, entitled "Good Faith Reliance on Misrepresentations," provided that whenever an insured relied in good faith on a misrepresentation or erroneous advice by an agent, the insured could be granted relief "the same as if otherwise entitled thereto."  *See Laux*, 442 F. Supp. 2d at 501 & n.10; *Nobles*, 122 F. Supp. 2d at 1297.  The 2004 amendments to the regulations repealed this section.  *See* 69 Fed. Reg. 48652-01, at 48654-56 (Aug. 10, 2004).  In its response to comments to the proposed repeal, the FCIC explained:

> [M]ost of the advice given to policyholders is provided by agents.  Therefore, the interests of insureds are protected because any erroneous advice would be covered by the agents' errors and omissions insurance.  In addition, the preamble to the policy specifies that no policy provisions may be waived or varied in any way by an insurance

---

[12] The Tennessee Court of Appeals released a companion case on the same day and with the same name as *Plants*. *See Plants, Inc. v. Fireman's Fund Ins. Co.*, No. M2011-02274-COA-R3-CV, 2012 WL 3326295 (Tenn. Ct. App. Aug. 13, 2012).

provider, agent or any other contractor or employee of the insurance provider or USDA unless the policy specifically authorizes a waiver or modification by written agreement.  To allow for equitable relief could permit government employees, insurance providers or agents to modify or waive policy provision, which would conflict with the preamble.  No change has been made.

*Id.* at 48656.  This commentary confirms that the contract cannot be reformed; and the fact that part of the rationale for the repeal of the "Good Faith Reliance on Misrepresentations" provision was that "erroneous advice would be covered by agents' errors and omissions insurance" confirms that state-law tort claims are not preempted.  Because the contract only insures crops produced through good farming practices, and because planting non-irrigated corn behind winter wheat was not a good farming practice, the breach-of-contract claim cannot succeed unless the contract is reformed.  But the contract cannot be reformed.

It also appears that the plaintiffs argue, perhaps alternatively, that they only entered into state-law contracts that were not federally reinsured.[13]  This argument would bypass the need for reformation.  In the end, however, this argument also fails because the plaintiffs allege in their complaint and continue to admit that they fully intended to enter into federally reinsured insurance contracts with ARMtech.  *See* Document #116, at 30 ("[The Court:] And in fact, you've . . . alleged in your amended complaint that [the plaintiffs] entered into a contract that would be reinsured under the FCIA.  [The plaintiffs' attorney]: Well, that was the representation made, and *that was certainly what my clients sought*." (emphasis added)); *Dziga v. Muradian Bus. Brokers, Inc.*, 28 Ark. App. 241, 245, 773 S.W.2d 106, 107 (Ark. App. 1989) ("[C]ourts will, if possible, construe the contract

---

[13] *See* Document #100, at 8 ("The foregoing facts . . . establish contracts between ARMtech and the Hunts and between ARMtech and the Pelzers under Arkansas law, even though those contracts are not reinsured . . . with FCIC."); Document #116, at 26 (plaintiffs' attorney at oral argument: "The reality is and as a practical matter, my clients did not contract with, and, in fact, the cases are replete with this admonition, that this is not a contract with the federal government . . . .").

in a manner which gives effect to the reasonable intentions of the parties." (citing *Shibley v. White*, 193 Ark. 1048, 104 S.W.2d 461 (1937)); *see also* Document #110, at 2-3 (admitting, in response to ARMtech's statement of uncontested facts, that the plaintiffs were issued, by ARMtech, various multiple peril crop insurance policies on standardized forms promulgated by the FCIC; and that they elected to insure their corn under these policies); Local Rule 56.1(c) ("All material facts set forth in the statement filed by the moving party . . . shall be deemed admitted unless controverted by the statement filed by the non-moving party . . . ."). These admissions dismantle the argument that the plaintiffs entered only into state-law contracts.

Finally, it could be that the plaintiffs instead meant to argue that the parties entered both into contracts that were federally reinsured and contracts that were not federally insured. This argument would posit that ARMtech entered into the non-federally reinsured contracts through Church's assurances and through the schedules of insurance provided to the plaintiffs, which confirmed to the plaintiffs that their double-cropping was indeed covered and that ARMtech had bound the coverage. The plaintiffs, however, have provided no evidence that any of the parties actually intended to enter both into contracts that were federally reinsured and contracts that were not. *See Arciniaga v. Gen. Motors Corp.*, 460 F.3d 231, 237 (2d Cir. 2006) ("[M]ultiple agreements may be read as one contract only if the parties so intended, which we determine from the circumstances surrounding the transaction."); *Dziga*, 28 Ark. App. at 245, 773 S.W.2d at 107; *Mid-Am. Real Estate Co. v. Iowa Realty Co., Inc.*, 406 F.3d 969, 972 (8th Cir. 2005) ("The parties' intentions at the time that they executed the contract are the touchstone for determining its meaning.").

In summary, except for challenges to determinations of good farming practices, breach of contract claims under the FCIA must be submitted to arbitration. The plaintiffs have submitted no

claims to arbitration.  Challenges to determinations of good farming practices must be appealed to the agency, after which they may be appealed to district court.  That was done, and the plaintiffs lost. Unless the contracts are reformed, no breach-of-contract claim can succeed, but as a matter of law, the contracts for federally reinsured crop insurance cannot be reformed.  The law thus bars all of the plaintiffs' contract claims against ARMtech.  Therefore, the plaintiffs' motion to amend will be denied as futile.  *See Roberson v. Hayti Police Dep't*, 241 F.3d 992, 995 (8th Cir. 2001) ("[A] district court's denial of leave to amend pleadings is appropriate . . . [when] futility of the amendment . . . can be demonstrated.").

## B.     Justifiable Reliance

ARMtech next argues that the state-law tort claims fail, even if they are not preempted, because each tort claim requires justifiable reliance as an essential element and, as a matter of law, the plaintiffs cannot establish that element.[14]  *See, e.g., Tyson Foods, Inc. v. Davis*, 347 Ark. 566, 580, 66 S.W.3d 568, 577 (2002) (fraud or deceit in Arkansas requires justifiable reliance on the representation). ARMtech's argument is based on the proposition that insureds are charged with constructive knowledge of their federally reinsured insurance policies, and the policies here required good farming practice determinations to be in writing, dated, and supported by expert opinions. Because it is undisputed that Church's assurances were not in writing, dated, or supported by expert opinions, ARMtech contends that the plaintiffs could not have justifiably relied upon the assurances in believing that their double-cropping was insured.

---

[14] ARMtech does not move for summary judgment on the tort claims based on any other element, nor does it argue that Arkansas does not recognize the torts asserted.

15

In 1947, the Supreme Court held that federal regulations bound all persons covered by the FCIA—which at the time meant all those persons directly insured by the FCIC—regardless of whether they had actual knowledge of any specific regulation. *FCIC v. Merrill*, 332 U.S. 380, 384-85, 68 S. Ct. 1, 3-4, 92 L. Ed. 10 (1947). In 1983, the Fourth Circuit held in a similar context that farmers are "charged with knowledge of the regulation and the policy." *Mann v. FCIC*, 710 F.2d 144, 147 (4th Cir. 1983). In 1994, the District of South Carolina held that insureds are bound by regulations and policy provisions even when they are directly insured by private insurers and not the FCIC. *Walpole v. Great Am. Ins. Cos.*, 914 F. Supp. 1283, 1290-91 (D.S.C. 1994). Finally, the FCIC in 2004 stated that "all FCIC personnel, insurance providers, agents and producers are presumed to know the provisions of the [FCIA] and the regulations, including all policy provisions. . . ." 69 Fed. Reg. at 48656. Thus, regardless of their actual knowledge, the plaintiffs may be charged with constructive knowledge of their policy and the relevant regulations.

Here, the policy states in its introduction that the insurer "will use the procedures (handbooks, manuals, memoranda and bulletins) as issued by FCIC and published on the RMA website . . . in the administration of this policy, including the adjustment of any loss or claim submitted hereunder." Document #53-2, at 1. Relying on this provision, ARMtech points to a 2005 bulletin issued by the RMA stating that good farming practice determinations provided by an approved private insurer must, among other things:

1.      Be in writing and dated;

2.      State the facts relating to the production method obtained from the producer;

3.      Contain or reference the published materials or any written opinions or recommendations or state the opinion or recommendation of any agricultural expert . . . .

16

Document #53-5, at 6 (RMA Bulletin No. MGR-05-010 I.6.).[15]  The plaintiffs, ARMtech contends, had constructive knowledge of these bulletin provisions and thus could not have justifiably relied on an oral representation  that non-irrigated corn planted behind winter wheat was insurable.[16]

The same bulletin, however, describes this written, dated, and supported determination as typically coming after a crop has been planted and a claim has been asserted (i.e. during the loss adjustment period).  *See id.*, at 1 (MGR-05-010 Background).  In addition, the bulletin and the policy contemplate informal consultation between the insurer and the insured concerning what is and is not a good farming practice before a crop is planted.  For example, the policy states that, "We may, or you may request us to, contact FCIC to determine whether or not production methods will be considered 'good farming practices.'"  Document #53-2, at 3 (Basic Provisions § 1: Good farming practices).  And the bulletin states that:

> Producers should consult with their [insurer] regarding any opinion or information obtained from an agricultural expert to determine if such information or opinion constitutes sufficient documentation to support that the practice in question qualifies as a [good farming practice] as defined in the Basic Provisions.  Producers should also consult directly with their [insurer] regarding whether the recommended [good farming practice] is otherwise compliant with the terms of the Basic Provisions.

Document #53-5, at 3 (MGR-05-010 § I.B.).

These provisions in the policy and the bulletin undermine ARMtech's argument that the plaintiffs could not justifiably rely on an informal, unwritten statement by ARMtech's representative that planting non-irrigated corn behind winter wheat would be insurable.  Both the policy and the

---

[15] This bulletin was published on the RMA website, as is required by the plaintiffs' policies. *See* http://www.rma.usda.gov/news/managers/2005/PDF/MGR-05-010.pdf.

[16] ARMtech does not argue that the plaintiffs had constructive knowledge that double-cropping corn behind wheat was not a good farming practice.  Nothing in the policy and regulations in effect for the 2007 crop year stated that double-cropping was not a good farming practice.

bulletin encourage consultation before a crop is planted, and neither warns a farmer that he cannot rely on an oral assurance by the insurer during this consultation.  Thus, the Court cannot say as a matter of law that the plaintiffs' reliance on Church's statements was unreasonable.[17]  The policy and the bulletin are sufficiently ambiguous to create a fact issue on justifiable reliance.

ARMtech next argues that the Pelzers' state-law tort claims should be dismissed because Bryant only told Church that double-cropping was insurable in regard to Miller County, Arkansas, where the Hunts farmed.  There is evidence, however, that Church, who was ARMtech's agent, represented to the Pelzers that their double-cropped corn in Desha County and Drew County would also be insured.  In his deposition, David Pelzer testified that "Larry Church called me and told me I could plant corn after my wheat and that it was insured and that the Hunts were doing it." Document #86, at 21.  In addition, Church essentially admitted that he told the Pelzers that they would be insured even though he did not ask Bryant whether the Pelzers' crop in Desha and Drew Counties would be insurable.  Document #83, at 14-15.

## C.      Soliciting Agent

As noted above, Church and his agency have moved for summary judgment on ARMtech's third-party complaint, arguing that Church was a soliciting agent and, as such, had no authority to vary or waive the terms of the insurance policies.  Hence, according to Church, ARMtech could not be liable based on his conduct but only because of its own tortious conduct.

Based apparently on Church's contention, ARMtech asserted for the first time during oral argument that the plaintiffs' state-law claims should be dismissed because Church was merely a

---

[17] Moreover, Church testified that he knew that the plaintiffs would make planting and crop decisions based on the information that he relayed to them orally.  *See* Document #83, at 8.

soliciting agent who had no authority to waive or vary the terms of the coverage provided by ARMtech. *See Holland v. Interstate Fire Ins. Co.,* 229 Ark. 491, 493, 316 S.W.2d 707, 709 (1958) ("[Soliciting agent] has no authority to agree upon the terms of the policies or to change or waive those terms, nor can his knowledge be imputed to the company he represents."). As to the tort claims, which are the only claims that survive, no allegation is made that Church could change or waive the terms of the policies. Instead, it is alleged that he made representations that the double-cropped corn would be insurable when, in fact, it was not; and it is alleged that he relied on statements by ARMtech's national claims manager in making these false statements.

The closest case that has been cited by the parties is *Jackson v. M.F.A. Mut. Ins. Co.*, 169 F. Supp. 633 (W.D. Ark. 1958), *aff'd*, 271 F.2d 180 (8th Cir. 1959). The policy in *Jackson* was a fire insurance policy on a building. The contract provided that the insurance coverage would be suspended if the fire hazard was increased by means within the control or knowledge of the insured. While renewing the policy, the insured informed the insurance agent that the use of the premises was being changed. The insurance agent said that "he would take care of any changes that came up." *Id.* at 635. The building then burned down. After the loss occurred, the insurance company denied coverage because the aforementioned change of use had substantially increased the fire hazard on the premises. Jackson then brought suit. The district court held that the insurance agent's statements could not vary or waive the terms of the policy because the agent was merely a soliciting agent. *Id.* at 635-36. Even so, the district court held that the insurance company was liable to Jackson because the agent had actual or apparent authority to advise the insured and because the statement made by the agent could be construed as a statement of fact—that is, that the proposed change did not increase the fire hazard—within the scope of the agent's apparent authority. *Id.* at 636-38. The court

19

stated that its "holding is limited to the proposition that the representations or misrepresentations of a soliciting agent as to a fact outside of the policy and not in conflict therewith, if made within his actual or apparent authority, are binding upon his principal." *Id.* at 638.

Here, Church's statements that double-cropped corn would be insurable are, at least in part, factual statements to the effect that the double-cropping of the corn was a good farming practice. Those factual statements go to a matter outside of the policy and are not in conflict with the policy.[18] Moreover, Church arguably had apparent authority to make such statements to the insureds.[19]  Based on the holding of *Jackson*, therefore, Church's motion for summary judgment and ARMtech's motion for summary judgment on this point are denied. *See also Rowland v. Gastroenterology Assocs., P.A.*, 280 Ark. 278, 280-81, 657 S.W.2d 536, 537-38 (1983) (principal may be liable for the torts of his agent when the agent's acts are within his apparent authority).

### D.     Deceptive Trade Practices Act

In their reply brief, which was filed after oral argument, ARMtech argued for the first time that the plaintiffs' Arkansas Deceptive Trade Practices Act claims should be dismissed.  As a general rule, courts do not address arguments raised for the first time in a reply brief. *Akeyo v. O'Hanlon*, 75 F.3d 370, 374 n. 2 (8th Cir. 1996); *Cuningkin v. City of Benton, Ark.*, No. 4:05CV01130, 2007 WL 707343, at *4 (E.D. Ark. March 5, 2007); *Adams v. City of Manchester*, No. 4:11CV1309, 2012 WL 3242078, at *4 (E.D. Mo. Aug. 7, 2012) (citing *K.C.1986 Ltd. P'ship v. Reede Mfg.*, 472 F.3d

---

[18] To be clear, Church's statements were not in conflict with the policies because, at the time he made them, no policy provisions or regulations stated that double-cropping corn behind wheat was not a good farming practice in the counties in question.

[19] This point has not been well-developed by the parties.  Based on the FCIC commentary quoted *supra*, it appears to be industry practice that "most of the advice given to policyholders is provided by agents."  69 Fed. Reg. at 48656.

1009, 1018 n. 2 (8th Cir. 2007)).  Because the plaintiffs have not had an opportunity to brief this

issue, the Court will not decide it at this juncture.

## CONCLUSION

For the above reasons, ARMtech's motions for summary judgment are GRANTED with

respect to the plaintiffs' reformation claims, and DENIED with respect to all other claims.  Document

#53; Document #102.  The plaintiffs' joint motion for leave to file an amended complaint is DENIED.

Document #81.  Church's motion for summary judgment is DENIED.  Document #106.  The

plaintiffs' reformation claims are dismissed.

IT IS SO ORDERED this 4th day of March, 2013.

_____

J. LEON HOLMES
UNITED STATES DISTRICT JUDGE